**N. B. PANNELL, Jr., et al.,**
**Plaintiffs-Appellants,**

v.

**CONTINENTAL CAN COMPANY, INC.,**
**Defendant-Appellee.**

No. 75-3887.

United States Court of Appeals,
Fifth Circuit.

June 20, 1977.

**6.** *Petite v. United States*, 1960, 361 U.S. 529, 80 S.Ct. 450, 4 L.E.2d 490; *In re Washington*, 5 Cir., 1976, 544 F.2d 203.

John T. Avrett, Charles A. Pannell, Jr., Dalton, Ga., Robert E. Knox, Jr., Thomson, Ga., for plaintiffs-appellants.

W. Spencer Connerat, Jr., Nell C. Pillard, Savannah, Ga., for defendant-appellee.

Before WISDOM and GEE, Circuit Judges, and BOOTLE *, District Judge.

BOOTLE, District Judge:

The plaintiffs N. B. Pannell, Jr., Paul Anderson Pannell, and Dollie Bennie Pannell on February 26, 1974 brought an ejectment suit in the Superior Court of McDuffie County, Georgia against Continental

Can Company, Inc. (Continental) seeking recovery of 1,248 acres of land, together with rents, mesne profits, and punitive damages. Continental caused the case to be removed to the U. S. District Court, Southern District of Georgia on grounds of diversity. There the case was tried before a jury, resulting in a verdict favorable to the defendant. Having carefully considered the various issues presented by appellants for review, we affirm.

### The Case

Under the will of T. A. Pannell who died in 1922, a resident of Murray County, Georgia, he left 1,327 acres, more or less, to his son, N. B. Pannell for life with remainder to his children (1,248 acres of that land is the land in dispute here). The land lies in McDuffie County, Georgia. Neither the will nor the probate proceedings in Murray County were recorded in McDuffie County, Georgia until long after the making of all sales and conveyances here involved. N. B. Pannell, after this inheritance, lived on the land and farmed it until he and his family moved away "about 1924." He died in 1954.

All 1,327 acres were sold for unpaid state and county ad valorem taxes for the years 1923 through 1932, there being eight separate tax deeds executed beginning March 19, 1925 and ending April 3, 1933, the deed dated March 19, 1925 representing sales for 1923 and 1924 taxes and the deed dated April 2, 1930 also representing sales under two writs of fieri facias for taxes (tax fi. fa.'s), apparently for years 1927 and 1928. One V. S. Moore was the purchaser at five of these sheriff's sales, and the evidence would support a finding that he and his wife eventually acquired title to all property conveyed by these tax deeds and thus acquired the entire 1,327 acres and possessed the same adversely from the respective dates of sale until they sold same as hereafter stated. Each tax fi. fa. was levied on a separate described (and usually platted) portion of the larger tract, these portions ranging from 90 to 212 acres. The

* Senior District Judge of the Middle District of Georgia, sitting by designation.

1,327 acres thus acquired by the Moores (including the 1,248 acres here in dispute) constituted one contiguous tract which was contiguous also to other lands owned by the Moores.

Mr. and Mrs. Moore adversely possessed the disputed premises with other lands under said tax deeds until December 31, 1956 at which time they sold by general warranty deed 1,574.5 acres of their larger tract, which conveyance included the disputed premises, to Cherokee Timber Corporation (Cherokee), Continental's immediate predecessor in title, for $43.50 per acre. Mr. Lon L. Fleming, a then local practicing attorney, examined the title for the purchaser and with full knowledge of the terms of T. A. Pannell's will and of said tax deeds, gave a title opinion to the effect that said warranty deed would vest a good merchantable title in the purchaser. On October 5, 1957 Cherokee conveyed the 1,574.5 acres by general warranty deed to Gair Woodlands Corporation (Gair). Continental has succeeded to all rights of Gair by corporate mergers.

Appellants challenge certain of the district court's rulings with respect to the tax deeds, the admission of Mr. Fleming's opinion testimony, the sufficiency of the evidence generally to show title by presumption and its refusal to apply the Soldiers' and Sailors' Civil Relief Act to Colonel N. B. Pannell, Jr.

## The Tax Deeds

■ Appellants objected generally to the admission into evidence of the eight tax deeds. The only ground of objection urged was that they were being offered "without attaching the executions or the levies thereon." The objection was invalid and the deeds were properly admitted. "A sheriff's deed to land, executed to one who purchases at a tax sale, though not accompanied by the tax fi. fa. under which the land was sold, is good as color of title." *Peeples v. Wilson*, 140 Ga. 610, 79 S.E. 466 (1913).

■ Moreover a tax deed even though void for any reason is such color of title as will support prescription by seven years' adverse possession. *Smith v. Jefferson County*, 201 Ga. 674, 40 S.E.2d 773 (1946).

■ Appellants complain further of this portion of the court's charge: "In this case, if you were to find that V. S. Moore, or Vic Moore and his wife, got good title to this land and, thereafter, conveyed it to the predecessor in title or in claim to Continental, why in that event you'd have to find for the defendants." This complaint merits some discussion. It assumes that the tax executions were *in personam* rather than *in rem*. If all or any of these tax deeds represented *in rem* assessments, levies and sales the purchaser under such deed or deeds acquired "a good title as against the whole world." Ga.Code Ann. § 92–8103, *Gross v. Taylor*, 81 Ga. 86, 6 S.E. 179 (1888). While all these proceedings were probably *in personam*, rather than *in rem*, and some of them certainly were, as to others, there may be some room for doubt.[1]

■ But if we assume that all the proceedings were *in personam* the appellants

1. While Mr. Fleming testified that the fi. fa.'s were issued against N. B. Pannell, he also stated that he did not know whether the taxing authorities knew who owned the land—"it was a return in his name *apparently* because that is where they got it off the tax digest, was that return." Asked whether the property was sold for taxes on that specific property or taxes that N. B. Pannell owed the county for whatever he owned in the county, he replied:

> A. No, sir, I can't say that except for the fact that they selected a portion of the land to levy on each year when they started to get what taxes

was due to the county, and they'd set it off . . .

The Court: Taxes owed by N. B. Pannell for the county?

A. To the county on that land . . . that's the way it was returned on the (tax) digest.

These tax deeds are lacking in uniformity as to their recitals and provisions. All indicate that they are tax deeds in that they are pursuant to sales made under fi. fa.'s issued by named tax collectors. Some specify the particular year or years for which the taxes were not paid and for which the fi. fa.'s were issued. All except the deed representing sale for non-payment

are not entitled to a reversal. Their reliance is, of course, upon the rule that "where land is held by a life tenant, and taxes are assessed against him and executions issued *in personam* only, a sale under the levy of such executions passes only the life estate." *Dixon v. Evans*, 222 Ga. 133, 136, 149 S.E.2d 124, 127 (1966); *Howell v. Lawson*, 188 Ga. 164, 3 S.E.2d 79 (1939). There is an important exception to that rule. It was ironed out by Chief Justice Duckworth in *Townsend v. McIntosh*, 205 Ga. 643, 54 S.E.2d 592 (1949) as follows:

> Under the decisions of this court, where nothing further appears, a purchaser at a sale under a tax execution in personam against a life tenant acquires only the life estate, but where, as here, it further appears that the life tenant is in possession, that the whole property was levied upon, and that the execution embraces only the taxes upon the specific property, the purchaser acquires title to the fee, and the whole property, including the remainder estate, as well as the life estate, passes.[2]

Happily for this court the Supreme Court of Georgia as currently as September 29, 1976 in *Pannell v. Moore*, 237 Ga. 761, 229 S.E.2d 603 has applied the *Townsend* rule to the first two tax deeds at issue here, the 1925 deed for 1923 and 1924 taxes, and the 1926 deed for 1925 taxes. When the Moores sold to Cherokee, Continental's predecessor in title on December 31, 1956, they retained 85.81 acres from the Pannell 1,327-acre tract and these 85.81 acres were later conveyed to their son, J. W. Moore. The 85.81 acres were a part of the lands conveyed by the two tax deeds in 1925 and 1926. The remaining portions of the lands conveyed by these two sheriff's deeds were acquired by Continental. The 85.81 acres were the subject matter of an ejectment action brought by the same plaintiffs who are appellants here. The two ejectment suits were filed the same day. The effect of this recent decision by the Supreme Court of Georgia was to dismiss the suit and to affirm title in the defendants as a matter of law. The appeal to the Supreme Court of Georgia was from the grant of a summary

---

of 1927 and 1928 taxes indicate that N. B. Pannell was the defendant in fieri facias. Some show that the property levied upon and sold was seized as the property of N. B. Pannell; others do not. The earliest deed (dated March 19, 1925 covering sales for 1923 and 1924) in the habendum clause says "in a[s] full and ample a manner as the said N. B. Pannell or his heirs and assigns, did hold and enjoy, or might have held and enjoyed the same had it not been seized and sold under the executions aforesaid"; the second deed (dated August ——, 1926 covering the sale for 1925 taxes) contains practically identical language; and the last deed (dated April 3, 1933 covering the sale for 1932 taxes) says also "in as full and ample a manner as the same was held and possessed by the said N. B. Pannell when the said property was levied upon and sold as aforesaid." None of the other five tax deeds contains such language. These other five deeds convey title "in fee simple" and the sheriff warrants the title "as far as in law or equity he may be bound to do as sheriff," this notwithstanding the fact that in the deed for 1926 taxes the land description refers to N. B. Pannell "as life tenant" and the deed for the 1931 taxes has a plat attached referring to "N. B. Pannell and children's land."

2. The full import of this exception is gleaned from further language in *Townsend*:

> It was held in *Verdery v. Dotterer*, 69 Ga. 194, that taxes are not only against the owner but against the property itself as well. There rests upon those persons having an interest in property a legal duty to see that all taxes thereon are paid, and they are required to perform this duty by seeing that the taxes are paid in order to protect their reversionary or other interests in such property. *Gross v. Taylor*, 81 Ga. 86, 6 S.E. 179. Reducing these legal principles to a succinct statement, they mean that when those having an interest in property allow another, whether voluntarily or because required by law to do so, to be in possession thereof the taxing authorities are justified in law in proceeding in personam against such person in possession to collect the taxes thereon, and in doing so to sell the entire fee. This court, in *Barnes v. Lewis*, 98 Ga. 558, 25 S.E. 589, held that despite the fact that the person there in possession, against whom a tax execution in personam issued, had no title or interest in the property whatever, yet a purchaser at a sale under a tax execution acquired title to the fee as against the true owner of the property. 205 Ga. at 645, 54 S.E.2d at 593.

judgment for the defendants and from failure to strike said two deeds offered by defendants in support of their motion for summary judgment.

■ *Pannell v. Moore, supra,* is fairly dispositive of all tax deed questions here. As previously observed no valid objection was urged to the admission of all these deeds into evidence. The challenged instruction was, under this recent decision, patently correct as related to the first two deeds [3] (the first three tax years) and since the exception was broadside to the charge as given and was not discriminating and contained no suggestion or request that the charge be modified so as to apply only to said two deeds it was non meritorious. Rule 51, Fed.R.Civ.P.; *Palmer v. Hoffman,* 318 U.S. 109, 118, 63 S.Ct. 477, 482, 87 L.Ed. 645, 653 (1943), *Investment Serv. Co. v. Allied Equities Corp.,* 519 F.2d 508, 510 (9th Cir. 1975)), and *Delancey v. Motichek Towing Serv., Inc.,* 427 F.2d 897, 900 (5th Cir. 1970). This is not to suggest that the charge was not also correctly applicable to all of the deeds. In *Pannell v. Moore, supra,* the court said:

The first question to be considered is the admissibility in evidence of such tax deeds. Each deed was regular on its face, showing the issuance of a writ of fieri facias issued by the tax collector on the account of nonpayment of taxes, that the land had lately been seized as the property of N. B. Pannell, and the plat attached represented the tract of land levied upon.

Then after quoting the *Townsend v. McIntosh* rule, *supra,* the court continued:

In this case the evidence submitted in support of the motion for summary judgment submitted by the defendants showed that the life tenant was in possession during the years covered by the first tax execution, that the whole property

covered by such tax deed was levied upon and that the execution embraced only taxes upon the property covered by the life estate inasmuch as the defendant in the tax execution owned no other property in McDuffie County.

And that is not all. The court went further and held that since the evidence showed possession by H. B. Pannell in 1922, 1923, and 1924, the mere fact that he and his family moved from such property "in about 1924" would not overcome the presumption that the defendant in fi. fa. was in possession of the property in 1925, the year covered by the second sale by the sheriff under the rule that "once a status has been proved, it is presumed to continue to exist."

In our case, as well as in *Pannell v. Moore, supra,* the evidence shows, or at least would support a finding, "that the life tenant was in possession (during 1923, 1924 and 1925), that the whole property covered by such tax deed[s] was levied upon and that the execution embraced only taxes upon the property covered by the life estate inasmuch as the defendant in the tax execution owned no other property in McDuffie County." The evidence does not indicate that Mr. H. B. Pannell owned any other property in McDuffie County. Mr. Fleming testified at first that he thought he did, but that he did not know, and when recalled to the stand later testified that he did not "recall finding a record of it." Since according to *Pannell v. Moore* he owned no other property in 1922, 1923, 1924, or 1925, the presumption is that he acquired none through 1932, especially since he moved away (at some time unfixed with any degree of precision) and permitted his inheritance to be sold for taxes piece by piece, year by year, with no effort to redeem. Since the charge complained of was correct as to the first two deeds, we need not decide whether or to what extent it

---

**3.** Appellants contend that the habendum clause language in the tax deed dated April 3, 1933 "in as full and ample a manner as the same was held and possessed by the said N. B. Pannell when the said property was levied upon and sold as aforesaid" prevented the passing of more than a life estate. Oddly enough, the first two tax deeds adjudicated in *Pannell v. Moore, supra* as passing title contained language practically identical.

should have been modified as to subsequent years if appropriate exception or request had been made. The trial court was not called upon to decide whether merely "moving away" or changing domicile is to be equated with surrendering or terminating possession or whether proving merely that one in possession "moved away" is sufficient to overcome the presumption that his possession so firmly established "continue[s] to exist" in view of the fact that one does not have to live on property in order to be in possession of it. Nor are we called upon so to decide.

4. "Under the law preceding the act of March 31, 1937, a redemption was effected by payment to the purchaser within 12 months of 'the amount paid by said purchaser for said land, with ten per cent premium from the date of purchase to the time of payment.' Code of 1910 §§ 1169, 1170." *Durham v. Crawford*, 196 Ga. 381, 385, 26 S.E.2d 778, 782 (1943). The Act of 1937 Ga. Ann. Code §§ 92–8301–8314, provides for redemption "at any time within 12 months from the date of said sale, and at any time thereafter until the right to redeem shall be foreclosed by the giving of" a prescribed notice. Sec. 3 of the Act of 1937 provides that said Act shall not "apply to or affect any tax sale heretofore held or any tax deed now outstanding, as to which the sections of the Code hereby appeal [sic] shall remain of full force and effect." In 1949 the legislature amended the Act of 1937 by enacting what are now Code Sections 92–8315 and 92–8316 reading as follows:

*92–8315 Title under tax deed to ripen by prescription.*

Nothing contained in sections 92–8301, 92–8306 to 92–8314, inclusive, shall prevent a title under a tax deed from ripening by prescription after a period of seven years from the date of the execution of the tax deed. Any tax deed regularly executed at a valid and legal sale held by the State or any subdivision thereof, including counties and municipalities, when the defendant in fi. fa. is sui juris, shall after the expiration of seven years from the date of said tax deed convey fee simple title and title to the property described in said tax deed shall vest absolutely in the grantee therein or his heirs or assigns. In the event the defendant in fi. fa. is laboring under any legal disability, then the prescriptive term of seven years shall begin from the time the said disabilities are removed or abate.

■ The charge was correct, and correct as to all years, for another reason. Where real property is sold for taxes and purchased by a person not bound to pay the tax, and the property is not redeemed as provided by statute within the statutory period, the acquired title of the purchaser at the tax sale becomes absolute.[4] *Horton v. Johnson*, 187 Ga. 9, 11, 199 S.E. 226 (1938).

The Moores under the tax deeds acquired at least an inchoate or defeasable title, *Herrington v. LaCount*, 225 Ga. 232, 233, 167 S.E.2d 631, 633 (1969); *Patterson v. Florida*

(Acts 1949, pp. 1132, 1133.)
*92–8316 Same; deeds executed seven years prior to passage of section 92–8315.*

Any title under any tax deed that has been executed for seven years prior to the passage of this section and approval thereof by the Governor shall be deemed to have ripened by prescription: Provided, that the defendant in fi. fa. under which any property has been sold, or his assigns, or any person having any right, title or interest in or lien upon said property, may have 12 months from the date of the approval of this section by the Governor to redeem any property that he may have had a right to redeem under sections 92–8301 and 92–8306 to 92–8314, inclusive, on the date of the approval of this section, by the Governor and if no such proceedings have been commenced within 12 months from the date of approval of this section by the Governor then all rights of all persons to redeem said property shall be forever barred.
(Acts 1949, pp. 1132, 1133.)

Appellants contend that since the Act of 1937 did not apply to pre-1937 tax sales, neither does the 1949 Act. We do not agree. We agree rather with the trial court who ruled:

[T]he entire chapter of the Georgia Code, Section 92–8301, et seq. is composed of "cut off" statutes perfecting title in grantees under tax deeds. Plaintiffs have failed to show any dispensation from the effects of these statutes.

Even if the Act of 1949 were not applicable to pre-1937 tax sales, appellants would fare no better. In *Forrester v. Lowe*, 192 Ga. 469, 476, 15 S.E.2d 719, 724 (1941), in dealing with a 1935 tax sale the court said:

No redemption having been made during the time in which redemption is authorized, the City of Atlanta acquired under the tax deed an absolute and unconditional title to the land sold.

*Realty and Fin. Corp.*, 212 Ga. 440, 442, 93 S.E.2d 571, 574 (1956), which ripened into good title through failure of redemption.

## Mr. Fleming's Opinion

█ Appellants duly excepted to Mr. Fleming's being permitted to testify in effect that when he examined the title in 1956 it was his opinion that the Moores possessed and conveyed a good merchantable title to the lands in dispute. This testimony was properly admitted, restricted as it was by the court's admitting it, not "as proof of any title or lack of it, but  .  .  . merely to show the good faith or not of the defendant Continental Can Company in measuring their actions in this case." This witness as attorney for Continental's predecessor in title examined the title to these lands a half century prior to the trial and knew as much, perhaps more, about these lands and the title thereto than any other living person. Appellants contended at trial that Continental's predecessors in title, Cherokee and Gair, came into possession of these lands in bad faith with knowledge that the Moores had no title and with knowledge that the title was in the life tenant's heirs at law. They sought to recover punitive damages from Continental. They charged that this knowledge was acquired first by this witness and that his knowledge was chargeable to Cherokee, Gair, and Continental. To exclude this witness's testimony that in 1956 it was his opinion that the title was good and merchantable and that he back then so advised his clients would be to deny Continental the privilege of denying and disproving the charge levelled against it. This testimony was relevant and necessary to oppose the charge of bad faith and to resist the effort to collect punitive damages.

## Title by Prescription

"Title by prescription is the right to property which a possessor acquires by reason of the continuance of his possession for a period of time fixed by the laws." Ga.Code Ann. § 85–401. "Possession to be the foundation of a prescription must be  .  .  .

public, continuous, exclusive, uninterrupted, and peaceable, and be accompanied by a claim of right." Ga.Code Ann. § 85–402. "Actual possession of lands is evidenced by enclosure, cultivation, or any use and occupation thereof which is so notorious as to attract the attention of every adverse claimant, and so exclusive as to prevent actual occupation by another." Ga.Code Ann. § 85–403. "Constructive possession of lands exists where one having paper title to a tract of land is in actual possession of only a part thereof. In such a case, the law construes the possession to extend to the boundary of the tract." Ga.Code Ann. § 85–404. "Possession under a duly recorded deed will be construed to extend to all the contiguous property embraced therein." Ga.Code Ann. § 85–405. "Actual adverse possession of lands for 20 years, by itself, shall give good title by prescription." Ga. Code Ann. § 85–406. "Adverse possession of lands, under written evidence of title, for seven years, shall give a like title by prescription." Ga.Code Ann. § 85–407.

█ The evidence showed such possession by the Moores from the dates of the respective tax deeds with farming, sawmilling and renting to tenants. It showed similar possession by Continental, Gair, and Cherokee, its immediate predecessors, ever since the date of the warranty deed from the Moores to Cherokee, duly recorded, with survey attached, December 31, 1956. This possession was clearly adverse and was evidenced by activities, uses and occupation "so notorious as to attract the attention of every adverse claimant, and so exclusive as to prevent actual occupation by another." Ga.Code Ann. § 85–403. Said activities, uses and occupation included payment of taxes ($9,410.31 for 1957 through 1973), clearing of lands, cultivation (planting, growing and harvesting trees—some planting being in rows), posting, and painting of boundary lines, granting hunting rights to many persons, fire fighting and timber cutting. We are in agreement with the statement made by the trial court when he overruled appellant's motion for judgment notwithstanding the verdict:

Without going into the merits or demerits of all of plaintiffs' contentions, the Court is of the opinion that the evidence showing that defendant and its predecessors in title held the land in question under color of title pursuant to tax deed for more than seven years amply authorized, if not demanded, the verdict for defendant. . . .

Independently of Moore's possessing under the tax deeds, Cherokee, Gair and Continental have been in possession under the Moores' deed continuously since December 31, 1956.

■ Appellants complain that one portion of the court's charge had the effect of equating "tree farming" with other types of farming or cultivation.[5] We find this charge unobjectionable. One of the statutory earmarks of possession is "cultivation." Ga.Code Ann. § 85–403. Cultivation of annual crops is not required. "The cultivation of a turpentine farm upon a tract of land is such an occupancy as may be the basis of a prescriptive title to the land itself; and it is a question of fact depending upon the character of possession, the extent of the visible signs of occupancy and its continuance." *May v. Sorrell*, 153 Ga. 47, 62, 111 S.E. 810, 819 (1922).

■ Enclosure, while a good indication of possession, is not required. *May v. Sorrell, supra* at 65, 111 S.E. 810. All the boundary lines completely around the exterior portion of the tract were painted with half bands of white paint at intervals of 50 to 100 feet between the painted trees. Metal posted signs were erected about 100 yards apart. The corners were painted white and the tree nearest each corner was painted with a double white band completely circling the tree and all center line trees were circled with a painted white band. Trees on both sides of all public roads passing through the tract were also painted. Clear-cutting began as early as 1958. In

1959 tree planting by Continental on these premises took place to the extent of $9,561.50 in cost, and in the 1964–65 season to the extent of $7,281.24 in cost. During the spring of 1965, 400 acres of this land were "clear cut" site-prepared and planted into approximately 355,000 trees.

■ Appellants complain of the following charge: "I charge you that adverse possession of the lands for twenty years by itself shall give good title by prescription against every one. I charge you that adverse possession of lands under evidence of title for seven years shall give a like good title by prescription," the ground being that the twenty years possession is inapplicable in that the life tenant died on February 28, 1954, the suit was filed February 26, 1974 and the intervening period was two days less than the twenty years. This charge was not error. It was an adaptation of Georgia Code Ann. §§ 85–406 and 85–407. The former says that possession for twenty years gives "good title by prescription"; the latter says that possession for seven years under written evidence of title, gives "a like title by prescription." It was permissible to charge both sections for clarity. Beyond that if this were error it was harmless beyond a reasonable doubt. *Wright v. Estelle*, 549 F.2d 971 (5th Cir. 1977). If the jury intended to find twenty years adverse possession they certainly intended to find seven years under written evidence of title.

### Soldiers' and Sailors' Civil Relief Act

Appellants contend that as a matter of law no one could hold adversely to Colonel N. B. Pannell, Jr., one of the plaintiffs, during the period from September 8, 1942 to October 10, 1973, during which period he was in service in the U. S. Army. There is no evidence that Colonel Pannell was in any

---

**5.** The court charged: "So, that if these are utterly wild lands, you know, uncultivated in any way, why it's almost impossible to have adverse possession of that which is completely wild. So, you look to the evidence in this case to see whether it was cultivated and farmed—tree farming, if you please—but you know, looked after as if they were people actually in possession of it in determining whether or not there has been actual possession such as is required by the Doctrine of Adverse Possession."

way handicapped by military service. Any handicap would have to be presumed. His service extended over thirty-one years and was certainly voluntary in, at least large part, reaching far beyond the years of compulsory military service. He spent almost half of his post-World War II career service on duty in the United States. At retirement he held a master's degree earned while assigned to R.O.T.C. duty in Indiana in 1966.

██ We are of the opinion that the Soldiers' and Sailors' Civil Relief Act, 50 U.S.C.A.App. § 525 is inapplicable to a career service man like Colonel Pannell. He is not shown to have been handicapped by his military service from asserting any claim he had prior to the expiration of the prescribed period. Thus the prescriptive period was not tolled as to him.

While this question is new in this court two state court decisions are persuasive. *King v. Zagorski*, 207 So.2d 61 (Fla.D.Ct. App.1968) holds that a former service man who purchased land sixteen years after entering military service, who made no claims to ignorance of state laws as to payment of taxes or consequences of nonpayment and was under no handicap because of military service, could not redeem property under the Soldiers' and Sailors' Civil Relief Act, stating:

> It (the Act) was not aimed primarily as protection for the career military man; certainly it was not reasonably intended to provide a cloak of immunity to a property owner who, even though in military service, was in no way disadvantaged from the ordinary civilian in payment of his normal ad valorem taxes for the upkeep of government. We find no reported case wherein the Civil Relief Act has been sought to be applied to a state of facts such as exists here.

*Id.* at 65.

*Bailey v. Barranca*, 83 N.M. 90, 488 P.2d 725 (1971), is to the same effect.

> Mr. Bailey's contention, distilled to its essence, is that regardless of all other factual and legal considerations, by virtue of the quoted statute, he must automati-

cally prevail. If his position be meritorious, it would mean that a career service person could buy real estate, ignore and disregard his tax responsibilities for perhaps 30 years and then at his leisure during the redemption period following discharge, reclaim the property.

> The effect of any such holding on tax titles is readily apparent. Nothing would normally appear in the county clerk's records indicating the military status of the person whose title was extinguished by the deed to the state. If a tax title were offered or appeared in the chain of title, a prospective purchaser or encumbrancer would be required at his peril to make inquiry from matters dehors the county records whether or not the person whose title was extinguished was then in service and if so, whether he still was; if not, the date of his discharge, etc. A grave situation would be thereby created. . . .

*Id.* at 728

While perhaps not controlling, the case of *Newman v. Newman*, 234 Ga. 297, 216 S.E.2d 79 (1975) holds interest. A Georgia statute (Ga.Code Ann. § 67–1308) provides that title to real property conveyed to secure a debt shall revert to the grantor at the expiration of twenty years from the maturity of the debt. The case holds that military service on the part of the grantee in the security deed does not in any way impede such automatic reverter of title.

There are other assignments of error, all of which have been carefully considered and found not to constitute reversible error.

Accordingly, the judgment of the trial court is AFFIRMED.