Stephen G. CROUCH and Jessie Crouch, Plaintiffs,

v.

**GENERAL ELECTRIC COMPANY, Defendant.**

**Civ. A. No. J87–0476(L).**

United States District Court, S.D. Mississippi, Jackson Division.

Sept. 14, 1988.

Thomas W. Tardy, III, Susan L. Runnels, Thomas, Price, Jackson, Miss., Clarence L. McDorman, Jr., Lamar & McDorman, Birmingham, Ala., for plaintiffs.

S. Craig Panter, Michael Allred, Satterfield & Allred, Jackson, Miss., for defendant General Elec.

## MEMORANDUM OPINION AND ORDER

TOM S. LEE, District Judge.

This cause is before the court on the amended motion of defendant General Electric Company (GE) for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. Plaintiffs Stephen G. Crouch and Jessie Crouch timely responded to the motion and the court has considered the memoranda of authorities together with attachments submitted by the parties.

This is a products liability action in which plaintiffs have charged defendant GE with defective design, manufacture, assembly, sale and/or distribution of the helicopter engine, related systems and component parts of a Sikorsky UH–60A Black Hawk helicopter which crashed and injured plaintiff Stephen Crouch. At the time of the crash, which occurred on August 25, 1981 in the vicinity of Fort Bragg, North Carolina, Stephen Crouch was serving in the United States Army and assigned to Fort Bragg. As part of his duties, Crouch operated as an instructor pilot for the Black Hawk helicopter in question.

The issue presented on this motion for summary judgment is whether the Crouches' right to maintain this action has been extinguished by the applicable law. The parties do not dispute the facts material to a resolution of that issue. They do, however, disagree as to the legal conclusion to be drawn from the facts.

The court would first note that this lawsuit is not the first to be filed by the Crouches as a result of the helicopter accident. Following the crash, they brought suit in August 1983 against United Technologies Corporation, Norton Company, Associated Aviation Underwriters and Simula,

Inc. in a Florida state court. After three years and extensive discovery, that action was dismissed for lack of prosecution on October 6, 1986. No appeal was taken from that dismissal. Subsequently, plaintiffs filed a second suit in Jefferson County, Alabama, naming as defendants GE, United Technologies Corporation and others, and alleging claims for breach of warranty and negligence. That action was dismissed on motion by GE for summary judgment.[1] Finally, the Crouches, on August 21, 1987, brought their claims to this court, alleging negligence, breach of warranty, strict liability in tort and intentional tort, all arising out of the alleged defective design, manufacture, assembly and sale of the engine and related systems and parts.[2]

The parties agree that while a number of states have had some contact with this litigation, Mississippi is not among them except to the extent that Mississippi is now the forum for this action. Neither the crash nor any of the events leading up to the crash had any connection with the State of Mississippi. None of GE's activities relative to the design, manufacture, assembly, sale or delivery of the helicopter engine occurred in Mississippi and no action taken by anyone in the State of Mississippi caused or contributed to the accident. Moreover, when this suit was filed, plaintiffs were residents of Alabama; they are not now nor were they at any time relative to their claims residents of Mississippi. Neither is GE a Mississippi corporation. Because of the forum state's obvious lack of any connection with the parties or the events giving rise to this lawsuit, this court is required to determine which state's substantive law will apply.

In this diversity action, the court is bound to apply the law of the forum state, Mississippi, including Mississippi conflict-of-law rules. *Klaxon Co. v. Stentor Electric Mfg. Co.*, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). Under Mississippi choice-of-laws principles, application of the "center of gravity" or "most substantial relationship" test determines the substantive law applicable to actions brought in Mississippi. *Mitchell v. Craft*, 211 So.2d 509, 515 (Miss.1968) (adopting center of gravity test). Utilizing this analysis, a Mississippi court will apply the law of the state which has "the most substantial contacts with the parties, and the subject matter of the action." *Boardman v. United Services Automobile Ass'n*, 470 So.2d 1024, 1031 (Miss.1985)).

> [T]he court trying the action applies the law of the place which has the most significant relationship to the event and parties, or which, because of the relationship or contact with the event and parties, has the greatest concern with the specific issues with respect to the liabilities and rights of the parties to the litigation.

*Mitchell*, 211 So.2d at 515 (quoting *Craig v. Columbus Compress & Warehouse Co.*, 210 So.2d 645 (Miss.1968)).

Since the law of a single state will not necessarily control every issue in a particular case, the center of gravity test must be applied to each question presented, with the result that in some instances the law of more than one state will be applied in a given lawsuit. *Boardman*, 470 So.2d at 1031; *Price v. Litton Systems, Inc.*, 784 F.2d 600, 605 (5th Cir.1986) (quoting *Boardman*). In this action, plaintiffs allege four counts: (1) negligent, wanton or willfull design, manufacture, assembly, sale and distribution of the helicopter engine and related systems; (2) breach of express and/or implied warranty; (3) sale of a defective product in an unreasonably dangerous condition, *i.e.*, strict liability in

---

**1.** GE's motion for summary judgment was premised on several grounds including a statute of limitations bar, laches, lack of jurisdiction and improper venue. While the order of dismissal does not indicate the basis upon which the motion was granted, GE asserts and plaintiffs do not dispute that plaintiffs' claims were dismissed as time-barred by the applicable Alabama statute of limitations. The Alabama court's judgment of dismissal is presently on appeal to the Alabama Supreme Court.

**2.** Originally named as a defendant was United Technologies Corporation. However, since jurisdiction was predicated on diversity of citizenship, United Technologies was dismissed as it is an Alabama corporation and the Crouches were, at the time of filing suit, Alabama residents.

tort; and (4) gross, wanton and reckless conduct. While each of these claims are premised on an alleged defect in the helicopter engine and systems, three arise under tort law and one under contract or warranty law.

PLAINTIFFS' TORT CLAIMS

In *Mitchell v. Craft,* the Mississippi Supreme Court adopted section 145 of the *Restatement (Second) of Conflict of Laws* as governing choice-of-law for tort actions. Section 145 provides:

(1) The rights and liabilities of the parties with respect to an issue in tort are determined by the local law of the state which, as to that issue, has the most significant relationship to the occurrence and the parties under the principles stated in § 6.

(2) Contacts to be taken into account in applying the principles of § 6 to determine the law applicable to an issue include:

(a) the place where the injury occurred,

(b) the place where the conduct causing the injury occurred,

(c) the domicil, residence, nationality, place of incorporation and place of business of the parties, and

(d) the place where the relationship, if any, between the parties is centered.

Although the parties agree as to the applicable conflicts analysis and as to the appropriate characterization of plaintiffs' claims, it is as to the proper application of these factors that they part company. Defendant contends that North Carolina substantive law is applicable to the Crouches' tort claims. The Crouches urge, however, that Massachusetts law applies.

Clearly, under the first factor to be considered, the injury occurred in North Carolina which is where the accident happened. On the issue of where the conduct causing the injury occurred, the following facts are undisputed. The Lynn Production Division

of GE's Aircraft Engine component designed and manufactured the engine of the Black Hawk helicopter involved in the accident. The engine was manufactured pursuant to an award/contract with the United States Army Aviation Research and Development Command. Negotiations for this contract occurred between GE personnel in Ohio and Massachusetts and United States Army personnel in Missouri; the contract was actually executed at St. Louis, Missouri.

■ GE's Aircraft Engine component is an operating division of GE; its headquarters and certain manufacturing facilities are located at Evendale, Ohio. The Lynn Production Division is a major facility of GE's Aircraft Engine component and is located at Lynn, Massachusetts. The design and manufacture of the engines occurred at the Lynn Production Division facility in Lynn, Massachusetts and the engines were sold and delivered to the United States Army at Lynn, Massachusetts. The United States Army transported the engines to the facilities of United Technologies Corporation at Stratford, Connecticut, where United Technologies manufactured the helicopter involved in the accident. There, the engine at issue was installed in the helicopter. United Technologies sold and delivered the manufactured helicopters to the United States Army at Stratford, Connecticut, following which the helicopter in which Stephen Crouch was injured was assigned by the United States Army to Fort Bragg, North Carolina, where it remained in use until the accident. While conduct relative to the engine at issue is traceable to a number of states, the conduct charged by plaintiffs to have caused their injuries, the alleged defective design and manufacture of the engine, occurred in Lynn, Massachusetts at the Lynn Production Division.[3] *See Price v. Litton Systems,* 784 F.2d at 603–04.

---

3. Defendant agrees with this evaluation, in part, but adds that insofar as plaintiffs' claims are based on the failure of the engine and/or related parts, the conduct causing the injury occurred in North Carolina. Under defendant's analysis, in any products liability action, the

place where the injury occurred would be synonymous with the place where the conduct causing the injury occurred since in most, if not all cases, the injury will occur in the place where the product ultimately fails. This reasoning would render the first factor in the conflicts

GE is incorporated and has its principal place of business in New York and its general headquarters in Connecticut. At the time of the accident, Stephen Crouch was assigned to Fort Bragg, North Carolina, and had been since August 1979. That is, both plaintiffs had been living in North Carolina for approximately two years prior to the accident. Nevertheless, plaintiffs deny having been residents of North Carolina, stating that although Stephen Crouch was in fact assigned to Fort Bragg, Tennessee was their state of legal residence. Under the facts presented and for this court's purposes, the fact that plaintiffs may have claimed Tennessee as their state of legal residence does not impact upon the choice-of-law analysis. In *Price v. Litton Systems*, two army personnel were killed in a helicopter accident in Alabama while stationed in Alabama. One of the decedents claimed Texas as his state of legal residence; the other claimed Ohio. The Fifth Circuit there held that Alabama was "the place of residence (albeit temporary)," of the decedents, thus recognizing that the state in which army personnel are stationed is relevant in the conflict-of-law analysis. *Price v. Litton Systems, Inc.*, 784 F.2d at 604; *see also Davis v. National Gypsum Co.*, 743 F.2d 1132, 1134 (5th Cir. 1984) (not "clearly fortuitous" that accident occurred in Colorado where decedent, although Mississippi resident, was stationed in Colorado at time of death). The court is of the opinion, therefore, that North Carolina should be considered plaintiffs' state of residence for purposes of determining the applicable law.[4]

As to the final factor to be considered, plaintiffs assert that there is no relationship between the parties. The court is of the opinion, however, that the relationship between the parties, though slight, is centered in North Carolina. That is "the only location where [Stephen Crouch] came in contact with the products of the defendant." *Price v. Litton Systems, Inc.*, 784 F.2d at 604.

Upon consideration of the relevant choice-of-law factors for plaintiffs' tort claims, North Carolina emerges as the state having "the most substantial contact with the parties and the subject matter of the action." *Boardman*, 470 So.2d at 1031. Clearly, no state has a more substantial relationship to the parties and the subject matter than does North Carolina. And, even accepting plaintiffs' evaluation of the factors and conclusion that Massachusetts has "as significant relationship to the litigation as North Carolina[,]" North Carolina's substantive law would nevertheless apply. The Mississippi Supreme Court has adopted the view that the law of the state in which the injury occurred will determine the rights and liabilities of the parties unless some other state has a more significant relationship to the occurrence and the parties. *Mitchell*, 211 So.2d at 516. Thus, even assuming that all other factors pointed equally to North Carolina and Massachusetts, the undisputed place of the injury is North Carolina. Hence, North Carolina substantive law applies. *See Siroonian v. Textron, Inc.*, 844 F.2d 289, 292 (5th Cir. 1988) (in wrongful death action, law of place where injury occurred applies unless some other state has *more* significant relationship to accident and parties). Having determined that North Carolinia law governs the Crouches' tort claims, the question then becomes whether plaintiffs' claims remain viable or whether their rights have been extinguished by the applicable substantive law.

While Mississippi applies the substantive law of the state found to have the most substantial relationship to the claim

---

analysis superfluous, a position which the court cannot accept.

4. In the court's view, it is apparent that the reason the residence of parties has any significance in a *conflict-of-law* analysis is because the state of the parties' residence might well be expected to have a "[great] concern with … respect to the liabilities and the rights" of its citizens involved in litigation. *See Mitchell v. Craft*, 211 So.2d 509, 515 (Miss.1968). On the facts presented, it is clear that the Crouches have not resided in Tennessee at any time since 1979 when Stephen Crouch was initially assigned to Fort Bragg. Thus, Tennessee could be expected to have little, if any, concern with the rights and liabilities of the Crouches.

and parties, Mississippi applies its own procedural law which has traditionally and usually included its statute of limitations. An exception exists, however, when a limitations period imposed by the law of the "center of gravity" state is determined to be substantive. In such cases, the Mississippi courts will apply that time limit as part of the substantive law of that state. *White v. Malone Properties, Inc.*, 494 So. 2d 576, 578 (Miss.1986); *Siroonian v. Textron, Inc.*, 844 F.2d at 292 (citing *Ramsay v. Boeing Co.*, 432 F.2d 592, 596–597 (5th Cir.1970)) (exception to be broadly applied). Whether a time limitation is substantive depends on whether it is "an integral part of the statute which created the cause of action...." *Siroonian*, 844 F.2d at 292. If so, "expiration of the limitations period extinguishes the cause of action." *Id.; see also Bethlehem Steel Co. v. Payne*, 183 So.2d 912 (Miss.1966) (limitations period part of substantive law where "built in" or in "same enactment" as statute which *creates* right of action); *Price v. International Tel. and Tel. Corp.*, 651 F.Supp. 706, 708 (S.D.Miss.1986) (statutory limitations period part of substantive law if statute operates to extinguish right of action after time period has elapsed).

 The North Carolina legislature in 1979 enacted a comprehensive products liability act. *See* N.C.Gen.Stat. § 99B–1 through 99B–10. Under the Act, a "product liability action"

includes any action brought for or on account of personal injury, death or property damage caused by or resulting from the manufacture, construction, design, formulation, development of standards, preparation, processing, assembly, testing, listing, certifying, warning, instructing, marketing, selling, advertising, packaging or labeling of any product.

N.C.Gen.Stat. § 99B–1(3) (1987). Clearly, the present action is a product liability action as defined by this section. The North Carolina legislature also enacted, in connection with its products liability act, N.C.Gen. Stat. § 1–50(6), which provides that:

[n]o action for the recovery of damages for personal injury, death or damage to property based upon or arising out of any alleged defect or any failure in relation to a product shall be brought more than six years after the date of initial purchase for use or consumption.

Whether the limitation period referenced in section 1–50(6) is substantive or procedural is determinative of its applicability to plaintiffs' claims and in considering this issue, this court is bound to honor the construction of the statute placed on it by the courts of North Carolina. *See Siroonian*, 844 F.2d at 292. The North Carolina courts have clearly, unambiguously and unequivocally held that the N.C.Gen.Stat. § 1–50(6) is a statute of repose, not a statute of limitations, and as such is more than a rule of procedure but rather is part of the substantive law of that state.[5] *See Bernick v. Jurden*, 306 N.C. 435, 293 S.E.2d 405, 413 (N.C.1982) (section 1–50(6) makes

---

**5.** Statutes of repose acquire a substantive character since they operate to extinguish not only the right to enforce a remedy but the substantive right itself. Statutes of limitation, while in the nature of statutes of repose, apply only to extinguish the right to enforce the remedy. 51 Am Jur.2d *Limitation of Actions* §§ 15–16 (1970); *see Boudreau v. Baughman*, 86 N.C.App. 165, 356 S.E.2d 907, 910 (N.C.Ct.App.1987) (statutes of repose are "hybrid" statutes of limitations having potentially both procedural and substantive effect).

The Fifth Circuit, in *Wayne v. Tennessee Valley Authority*, 730 F.2d 392 (5th Cir.1984), construed a Tennessee statute similar to North Carolina's section 1–50(6) as a statute of repose, rather than of mere limitation, and explained as follows:

In recent years many states have enacted such statutes. They have been labeled "statutes of repose" in order to distinguish them from ordinary statutes of limitations which usually set much shorter time periods which run from the time the cause of action accrues, rather than from an arbitrary time such as the date of purchase. F. McGovern, *The Variety, Policy and Constitutionality of Product Liability Statutes of Repose*, 30 Am.U.L.Rev. 579, 584 (1981). Because the date of injury is not a factor used in computing the running of the time period, and such statutes typically do not have tolling provisions, the statutes acquire a substantive nature, barring rights of action even before injury has occurred if the injury occurs subsequent to the prescribed time period.

*Wayne*, 730 F.2d at 401–02.

substantive changes in law of products liability); *Boudreau v. Baughman,* 86 N.C. App. 165, 356 S.E.2d 907, 911 (N.C.App. 1987) (failure to file within prescribed time effectively clears defendant of wrongdoing and gives defendant vested right not to be sued). In *Davidson v. Volkswagenwerk, A.G.,* 78 N.C.App. 193, 336 S.E.2d 714, 716 (N.C.Ct.App.1985), the court observed that section 1–50(6) was intended as "a substantive definition of rights which sets a fixed limit after the time of the product's manufacture beyond which the seller will not be held liable." Similarly, the North Carolina Supreme Court has held in construing this section that

> [a] plaintiff must prove the condition precedent that the cause of action is brought no "more than six years after the date of initial purchase [of the product] for use or consumption." A plaintiff must also meet the time limitation of the applicable procedural statute of limitations.

*Bolick v. American Barmag Corp.,* 306 N.C. 364, 293 S.E.2d 415, 420 (N.C.1982).

■ Based on the foregoing, the court must conclude that North Carolina law, and in particular, the limitations period set forth in section 1–50(6), applies in the instant case. That six-year period expired six years after the date of "initial purchase for use or consumption." Plaintiffs admit that the initial purchase of the helicopter engine occurred on February 21, 1981; purchase of the assembled helicopter took place on March 31, 1981, the date of delivery by United Technologies and acceptance by the United States Army. This action was brought August 27, 1987, over six years later. Accordingly, plaintiffs' claims based in tort have been extinguished and

may not be maintained. They must therefore be dismissed. *See Wayne v. Tennessee Valley Authority,* 730 F.2d 392 (5th Cir.1984) (Tennessee statute of repose treated as substantive in conflicts analysis); *Hines v. Tenneco Chemicals, Inc.,* 728 F.2d 729 (5th Cir.1984) (North Carolina statute of repose held substantive in context of choice-of-law).[6]

### PLAINTIFFS' BREACH OF WARRANTY CLAIMS

■ The Crouches' breach of warranty claims are premised on the sale of the helicopter engine and/or helicopter and arise under contract or warranty law.[7] In the absence of an effective choice of law by the parties, the relevant factors in a contract choice-of-law analysis, as adopted by the Mississippi court, derive from section 188 of the *Restatement (Second) of Conflict of Laws* and are:

(a) the place of contracting,

(b) the place of negotiation of the contract,

(c) the place of performance,

(d) the location of the subject matter of the contract and

(e) the domicil, residence, nationality, place of incorporation and place of business of the parties.

*Boardman,* 470 So.2d at 1032. The contract under consideration in the case *sub judice* was executed in Missouri. Negotiations occurred in Missouri, Ohio and Massachusetts. The contract was performed in Massachusetts as that is where GE designed, manufactured and delivered the subject engine. The engine was delivered in Massachusetts, then transported to Con-

---

**6.** Plaintiffs urge that North Carolina's interpretation of the statute is not "unassailable," and in support of that assertion rely on *Habenicht v. Sturm, Ruger & Co., Inc.,* 660 F.Supp. 52, 53 (D.Conn.1986), in which the court rejected all of the North Carolina cases characterizing section 1–50(6) as substantive. However, as defendant correctly observes, the court in *Habenicht* noted that Connecticut's conflict-of-laws rules do not require a Connecticut court to accept the interpretation of the statute given it by the North Carolina courts. *Habenicht,* 660 F.Supp. at 53. Mississippi, unlike Connecticut, "honors the

construction of a *statute* placed on it by the courts of the state whose legislature enacted it." *Siroonian,* 844 F.2d at 292.

**7.** While a cause of action premised on breach of an implied warranty could be, and in fact by some courts has been, construed as one in the nature of a tort claim rather than contract, the appropriate characterization of plaintiffs' implied warranty claim is an issue which this court need not address since the result in either case will be the same under the facts presented.

necticut for assembly with the remaining parts of the helicopter. The helicopter, after assembly, was placed in use in North Carolina and was located in North Carolina at the time of the accident. Thus, the subject matter of the contract, the helicopter engine, was located in Massachusetts on the day of delivery. *See Price v. International Tel. and Tel.*, 651 F.Supp. at 711 (pertinent consideration is location of subject matter at time of delivery). Finally, the court has already concluded that the Crouches were North Carolina residents at the time of the accident. GE is a New York corporation with its principal place of business in New York and general headquarters in Connecticut; GE's Lynn Production Division has its principal place of business in Massachusetts.

In the court's view, having weighed the various factors, Massachusetts has the most significant contacts with the plaintiffs' warranty claim. The parties agree that under Massachusetts law, statutes of limitation are construed as matters of procedural rather than substantive law. *Wilson v. Hammer Holdings, Inc.*, 671 F.Supp. 94, 96 (D.Mass.1987). Accordingly, Mississippi's statute of limitations will apply.

Section 75–2–725 of the Mississippi Code provides a six-year limitations period for breach of warranty actions:

> (1) An action for breach of any contract for sale must be commenced within six (6) years after the cause of action has accrued.
>
> (2) A cause of action accrues when the breach occurs, regardless of the aggrieved party's lack of knowledge of the breach. A breach of warranty occurs when tender of delivery is made, except that where a warranty explicitly extends to future performance of the goods and discovery of the breach must await the time of such performance the cause of

action accrues when the breach is or should have been discovered.

Miss.Code Ann. § 75–2–725 (1972). The helicopter engine at issue was delivered by GE to the United States Army on February 27, 1981. Once the helicopter was assembled and the engine installed, the helicopter was delivered to the Army on March 31, 1981. Tender of delivery having been made more than six years prior to plaintiffs' institution of the present case, their breach of warranty claims appear to be barred by application of section 75–2–725. Plaintiffs, however, assert that the contract between GE and the United States Army contained express warranties as to future performance, thus bringing their warranty claims within the exception provided by the statute such that the cause of action accrued not at the time of tender of delivery but at the time the engine's defects were discovered, *i.e.*, the time of the crash.[8]

The alleged express warranties as to future performance to which plaintiffs refer are as follows:

> J 1 T700 NEW EQUIPMENT LIMITED WARRANTY
>
> A. WARRANTY OF MATERIAL AND WORKMANSHIP
>
> The Contractor warrants that each of the one hundred seventy (170) engines under contract DAAK50–78–C–001 will, at the time delivery [sic] be free from defects in material and workmanship.
>
> B. MAXIMUM TERM AND LIABILITY OF WARRANTY
>
> The warranty on each of the one hundred seventy (170) T700–GE–700 engines shall cease three (3) years from the date the Government accepts the first engine under Contract DAAJ01–77–C–0002, or upon expiration of five hundred (500) total engine hours on each serial number engine delivered to

---

8. Plaintiffs' claim premised on an implied warranty obviously does not satisfy the statute's requirement that the warranty must *explicitly* relate to future performance of the goods since "[e]xplicit means something expressed or clearly stated and is more than merely implied." *Rutland v. Swift Chemical Co.*, 351 So.2d 324, 325 (Miss.1977); *see also* J. White & R. Summers, *Uniform Commercial Code* § 11–9, at 419 n. 73 (2nd ed. 1980) (implied warranty by nature cannot be explicit). Clearly, therefore, plaintiffs' implied warranty claim is barred by operation of section 75–2–725.

the Government, whichever occurs first.

This provision is followed by a description of GE's obligations in the event of a covered defect which are limited to the repair and replacement of defective parts.

■■■ The "overwhelming majority" of courts have interpreted future performance exceptions such as those contained in section 75–2–725 very strictly. *Wilson v. Hammer Holdings, Inc.,* 671 F.Supp. at 96; *Standard Alliance Indus. v. Black Clawson Co.,* 587 F.2d 813, 820 (6th Cir.1978), *cert. denied,* 441 U.S. 923, 99 S.Ct. 2032, 60 L.Ed.2d 396 (1979) (courts have been harsh in determining whether warranty is one of future performance). To come within the future performance exception, a warranty must explicitly promise or guarantee future performance of the goods; it must be clear, unambiguous and unequivocal. *Rutland v. Swift Chemical Co.,* 351 So.2d 324, 325 (Miss.1977). The "warranty of material and workmanship" relied on by plaintiff does not expressly guarantee the future performance of the helicopter engines. Rather it simply warrants the condition of the goods at the *time of delivery.* *See Ranker v. Skyline Corp.,* 342 Pa.Super. 510, 493 A.2d 706, 708 (1985); *Holdridge v. Heyer–Schulte Corp. of Santa Barbara,* 440 F.Supp. 1088, 1103–04 (N.D.N.Y.1977) (express warranty merely constituted representation of product's condition at time of delivery and did not extend to future performance).

Although a number of courts have had occasion to address the applicability of the future performance exception to the normal accrual rule under UCC § 2–725(2), only rarely has an express warranty been held to be a warranty explicitly extended to future performance. As Professors White and Summer have noted, "extension of the normal warranty period does not occur in the usual case, even though all warranties in a sense apply to future performance of goods." J. White and R. Summers, *Uniform Commercial Code* § 11–9, at 419 (2d ed. 1980). They recognize, however, that such a warranty would arise in a case in which the seller gave a "lifetime guaran-

tee" or one in which he, for example, "expressly warranted that an automobile would last for 24,000 miles or four years whichever occurred first."

■■■ In the case at bar, the "maximum term of liability of warranty" provision claimed by plaintiffs to constitute an express warranty of future performance is, in the court's opinion, merely a repair and replace warranty which designates a remedy in the event of a defect and limits the exercise of that remedy to a three-year period. As one court has recognized,

[A] repair or replace warranty does not warrant how the goods will perform in the future. Rather, such a warranty simply provides that if a product fails and becomes defective, the seller will replace or repair within a stated period.

*Ontario Hydro v. Zallea Systems, Inc.,* 569 F.Supp. 1261, 1266 (D.Del.1983). Unlike a promise that a product will satisfactorily perform at all times or will work properly for a lifetime, which are words of warranty going to the performance of the goods, a promise to repair and/or replace warrants not that the goods will perform in the future but that if they do not, the supplier or manufacturer will make the necessary repairs. *See Owens v. Patent Scaffolding Co.,* 77 Misc.2d 992, 354 N.Y. S.2d 778 (Sup.Ct.1974). In fact "[u]nderlining the warranty to make needed repairs is the assumption that the goods may fall into disrepair or otherwise malfunction. No warranty that the goods will not, is to be inferred from the warranty to make needed repairs." *Id.*

In *Centennial Insurance Company v. General Electric Company,* 74 Mich.App. 169, 253 N.W.2d 696, 697 (1977), the court held that provisions in a contract practically identical to those found in GE's contract with the United States but which limited the agreement to repair and replace to the first year, were not warranties of future performance, but rather amounted to simply "a specification of the remedy to which the buyer is entitled should breach be discovered within the first year." *Centennial Insurance Co.,* 74 Mich.App. at 169, 253 N.W.2d at 697; *see also Frey Dairy v.*

*A.O. Smith Harvestore Products, Inc.,* 680 F.Supp. 253, 254–55 (E.D.Mich.1988) (express warranty for repair and/or replacement of defective parts or workmanship for 365 days clearly did not extend to future performance); *Ranker v. Skyline Corp.,* 342 Pa.Super. 510, 493 A.2d 706 (Pa.Super. Ct.1985) (express written warranty providing for repair of defects within one year of delivery not explicit and unambiguous statement of warranty of future performance); *New England Power Company v. Riley Stoker Corp.,* 20 Mass.App. 25, 477 N.E.2d 1054 (Mass.App.Ct.1985) (promises to repair or replace generally viewed as specifications of remedy rather than independent or separate warranty); *Allis–Chalmers Credit Corp. v. Herbolt,* 17 Ohio App.3d 230, 479 N.E.2d 293 (Ohio Ct.App. 1984) ("repair-and-replacement" language in express warranty was remedy rather than warranty of future performance); *Poppenheimer v. Bluff City Motor Homes,* 658 S.W.2d 106, 110 (Tenn.App.Ct. 1983) (12 months/12,000 mile repair or replace warranty not one explicitly extended to future performance of goods). *But see Standard Alliance Industries,* 587 F.2d at 821 (warranty to repair or replace for specified period of time is warranty extending to future performance).[9] In the court's view, the warranty upon which plaintiffs rely to extend the accrual time for their claims cannot and should not be construed as a warranty explicitly extending to future performance. There was no representation that the engine would perform, but simply if it did not, the needed repairs would be made. The alleged warranty, thus, does not clearly, unambiguously and explicitly extend to a future time. Plaintiffs therefore do not escape application of the limitations bar of Miss.Code Ann. § 75–2–725.

**THE SOLDIERS' AND SAILORS' CIVIL RELIEF ACT OF 1940**

The Soldiers' and Sailors' Civil Relief Act, 50 U.S.C.App. § 501 *et seq.* (SSCRA), was enacted in 1940 for the benefit of persons on active service in the United States military and naval forces. It was intended:

[t]o provide for, strengthen, and expedite the national defense under the emergent conditions which are threatening the peace and security of the United States and to enable the United States to more successfully fulfill the requirements of the national defense....

50 U.S.C.App. § 510. In the instant case, plaintiffs urge that the SSCRA renders all issues relative to the applicability of any limitations period moot since the Act tolled the running of the statute of limitations against Stephen Crouch[10] from the time of the accident until his discharge from military service. Specifically, Stephen Crouch relies upon section 205 of the Act, entitled "Statutes of Limitations as Affected by Period of Service" which provides, in pertinent part, as follows:

The period of military service shall not be included in computing any period now or hereafter to be limited by any law, regulation, or order for the bringing of any action or proceeding in any court ... by or against any person in military service ... whether such cause of action or the right or privilege to institute such action or proceeding shall have accrued prior to or during the period of such service....

50 U.S.C.App. § 525.

It is undisputed that Stephen Crouch was in active service in the United States Army at the time of the helicopter crash on August 25, 1981, and continued in active ser-

---

**9.** Two rare examples of courts' finding express warranties to extend to future performance are *Rempe v. General Electric Co.,* 28 Conn.Supp. 160, 254 A.2d 577 (Conn.Super.Ct.1969), and *Mittasch v. Seal Lock Burial Vault, Inc.,* 42 A.D. 2d 573, 344 N.Y.S.2d 101 (2d Dept.1973). In *Mittasch,* that finding was made as to an express warranty that a casket and burial vault would give satisfactory service "at all times." In *Rempe,* the product, a disposal unit, was warranted to "work properly for a lifetime."

**10.** The SSCRA does not operate in favor of Jessie Crouch since she was not a member of the military but rather was the wife of a serviceman. *Lester v. United States,* 487 F.Supp. 1033, 1039 (N.D.Tex.1980) (wife of serviceman not entitled to benefits of Act). Thus, regardless of the applicability of the Act, her claims would be time-barred.

vice until his medical discharge on April 14, 1987. This suit was filed on April 21, 1987, only seven days after his discharge. Thus, Crouch takes the position that the instant action is viable, regardless of which state's statute of limitations is applied, inasmuch as the limitations period under any statute could not begin running until April 15, 1987.

This court's disposition of plaintiffs' assertion is governed by the Fifth Circuit's decision in *Pannell v. Continental Can Co., Inc.*, 554 F.2d 216 (5th Cir.1977). In *Pannell*, the Fifth Circuit considered whether section 525 tolled the running of an adverse possession time limitation while the owner was in military service. Noting the absence of any evidence that Colonel Pannell was in any way handicapped by his military service and further that Colonel Pannell's service of over thirty-one years was voluntary and reached far beyond the years of compulsory military service, the court concluded that section 525 was inapplicable. Specifically, the court stated:

> We are of the opinion that the Soldiers' and Sailors' Civil Relief Act ... is inapplicable to a career serviceman like Colonel Pannell. He is not shown to have been handicapped by his military service from asserting any claim he had prior to the expiration of the prescribed period. Thus the prescriptive period was not tolled as to him.

*Pannell*, 554 F.2d at 225. *Pannell's* distinction between categories of active duty military personnel has been criticized as an unjustified excursion from the plain meaning of the language of section 525.[11] However, the rationale underlying the court's decision in *Pannell* is consistent with the objective sought to be served by Congress in enacting the SSCRA, *see* 50 U.S.C.App. § 510, and in the court's view, is particularly suited to a case such as the present one.

▮ Like the serviceman in *Pannell*, Stephen Crouch was a career military

person. At the time of his injury, he had accumulated fifteen years with the United States Army and has since retired with a total of twenty years and five months in the Army. Moreover, like the serviceman in Pannell, Crouch has not and cannot demonstrate any prejudice or hardship as a result of his military service which interfered with his ability to bring and prosecute this action. In fact, during the period of his military service, Crouch instituted two separate actions in two jurisdictions for the same injury for which he now seeks recovery. It is apparent to the court that Mr. Crouch, after the dismissal of both his Florida and Alabama lawsuits, has come to this court in search of a forum in which his claim has not been barred by a statute of limitation and in which his claim has not been previously dismissed. Moreover, permitting Mr. Crouch to utilize the SSCRA would not advance the legitimate and laudable purposes of the Act but rather would place in his hands a sword which would enable him to gain an unfair advantage. This practice has been denounced by the Mississippi Supreme Court and will not succeed before this court. In *Brown v. Brown*, 493 So.2d 961 (Miss.1986), a serviceman filed an action for divorce in the Mississippi state courts, but did not have process issued. Thereafter, his wife sued for divorce in California. Preferring to proceed in Mississippi, Mr. Brown, in reliance on section 201 of the SSCRA,[12] sought and was granted a stay of the California proceeding. The chancellor, on motion by Mrs. Brown, refused to dismiss the Mississippi action but entered a stay pending resolution of the California action. On appeal of the order granting the stay, the Mississippi Supreme Court observed that

> Clayton Brown was engaged in a certain amount of gamesmanship invoking the Soldiers' and Sailors' Civil Relief Act when it suited his convenience and waiv-

---

11. *See Bickford v. United States*, 228 Ct.Cl. 321, 656 F.2d 636, 640–41 (1981); *Barstow v. State of Texas*, 742 S.W.2d 495 (Tex.Ct.App.1988) (Texas state court not bound by *Pannell's* judicial construction of section 525).

12. Section 201 of the Act provides for a stay of any proceedings in any court in which a person in military service is involved unless his ability to prosecute or defend the action is not materially affected by reason of his military service. 50 U.S.C.App. § 521.

ing it when it did not. *Clayton Brown is trifling with the courts in a manner we do not find endearing.*

*Brown v. Brown*, 493 So.2d at 964 (emphasis added); *see also Roberts v. Fuhr*, 523 So.2d 20, 28 (Miss.1987) (serviceman should not be permitted to selectively invoke protection of SSCRA after having so recently sought to his benefit the services of Mississippi courts). This court likewise will not allow plaintiff to benefit from the protections of the Act when he himself has so recently chosen to waive its protections. Such "gamesmanship" should not and will not be tolerated.[13]

Accordingly, it is ordered that defendant's motion for summary judgment should be granted and this cause dismissed. A separate judgment shall be entered in accordance with Federal Rule of Civil Procedure 58.

See also 858 F.2d 978.

---

**13.** Defendant asserts that the Alabama court's judgment dismissing the Alabama action in response to a motion raising the issue of the applicability of the SSCRA, among other grounds, is res judicata in the present action. In this regard, contrary to plaintiffs' assertions, the fact that the action is presently on appeal to the Alabama Supreme Court does not affect the finality of the judgment for purposes of res judicata. 18 C. Wright, A. Miller & E. Cooper, *Federal Practice and Procedure* § 4433 (1981). However, the Alabama court's order of dismissal does not indicate on which of the several grounds raised that dismissal was ordered. The court would also note, though, that plaintiffs have not disputed defendant's assertion that dismissal was based on statute of limitation grounds, and hence carried with it a finding that SSCRA provided no protection to Stephen Crouch. Nevertheless, the court need not reach the issue of the preclusive effect of the Alabama judgment since the court has concluded that under the *Pannell* career serviceman exception, Stephen Crouch cannot seek refuge under the SSCRA.